Good morning, Your Honors. I'm Thomas Beck for the appellant, Catherine Meislin. And although the case is captioned, the City of Hawthorne, I defend the side of the case. We're really talking about the county of Los Angeles. We're here attacking a summary judgment motion that was granted against the plaintiffs and in favor of the county housing inspector on the claims of false arrest and malicious prosecution under Section 1983. The heart of our challenge is the fact that the court granted them relief on the grounds that there was probable cause for the prosecution as well as the arrest. That entailed, as the briefs point out, and the oppositions to the motion, including the summary judgment motion reconsideration motion that's before the court, that was a misapplication of California trespass law in the district court's opinion because she was believed in her she, because I, in her own mind, believed she was identifying herself as a housing inspector that she couldn't possibly commit a trespass. And therefore, my client's admission that she escorted her off the property without knowing who she was couldn't operate as a defense to the probable cause to support the battery charge. One question. You just said something that's contrary to what my understanding of the record is. You said that your client escorted the housing inspector off the property without knowing who she was. That is correct. Where would I find that in the record? Actually, it's a finding of fact at Excerpts of Record. Here, I just wrote it down. Excerpts of Record, page 007, finding fact true, number six, that the plaintiff didn't learn that Kasai was an inspector until after she'd been arrested. If that's the case, counsel, then doesn't that raise some issues about whether or not Kasai was a state actor at the time she filed the complaint? It does, but I think it's answered by the fact, as I've described it, that she never took that hat off the entire time. But it's not apparent. Just because you're a state housing inspector doesn't mean that you don't have causes of action against people or complaints against people in your personal capacity. She's not wearing a uniform. She doesn't have a tag that's visible. She doesn't have a cap or a sign. She hasn't identified herself in any way. And as a housing inspector, she doesn't lose her right to be free from injuries. So what makes us think that she's a state actor here and that she can be sued in 1983? Because throughout this entire process, from the moment she entered the property until she got through testifying in Catherine Wiseland's criminal case as a testifying witness, she always carried that mantle of authority as her basis for being president. She was – that never went away. She never contended that she was anything other than a state actor operating as a government agent for the County of Los Angeles as a housing inspector. And that's an undisputed fact. But getting back to Judge Bybee's point, though, it doesn't change the fact if you're a private citizen or a state actor, you are entitled under the law of California to be free from unwanted touching, are you not? You are if you're not trespassing and the touching is by itself offensive and unlawful. So you're saying that under California law that if somebody trespasses, you have the right to roughly remove them from the property? Is that what you're saying? Well, that was a disputed issue whether it was a rough removal at all. Okay, well, let's say it was a gentle but forceful removal from the property. Well, then it's a privilege because the California Battery Statute provides two elements. It has to be an unlawful and offensive touching. And the unlawful is the part that the district court overlooked. If Mrs. Wiseland is dealing with a trespasser, as the evidence showed, and she is not identifying herself, she is a trespasser. She had no business on the property. The tenant told her to leave. Mrs. Wiseland told her to leave. The tenant doesn't know what capacity she's doing there. Okay, but let's back up for a minute, counsel. Let's assume for discussion purposes that nobody knew, as you say in the record, that this was a housing inspector. I'm going to quote to you from People v. Rocha, which quotes Witkin. It says, It has long been established both in tort and criminal law that the least touching may constitute battery. In other words, force against the person is enough. It need not be violent or severe. It need not cause bodily harm or even pain, and it need not leave any mark. And I have no quarrel with that. It doesn't address the issue of privilege. That's given by California Civil Code Section 50 in the cases that have followed that. And Mrs. Wiseland fits right into that. So you're saying that there's no probable cause, notwithstanding what I just read from People v. Rocha, because the privilege overcomes that? That's what you're saying? Indeed. I would argue that if Mrs. Gassai had been truthful to Officer Hoffman and told him exactly what had happened, then her touching would have been considered privilege and there could not have been an argument. And what do you cite for your privilege argument again? What case or statute? It's California Civil Code Section 50, which provides for that. And then there's several cases that I also set forth that provide the same relief or privilege, if you will. Does that undercut the probable cause argument, though? It may protect you from a civil action, but does it undercut the argument of a probable cause? I mean, that's what troubles me here, because you've got a housing inspector who goes in there. Your client admits having touched her and removed her from the property. Let's assume it was very gently. But she touched her. It was an unwanted touching. I agree. And under Rocha, it seems to me that even if you have a privilege, the privileges against a civil suit does not undermine the fact that there was probable cause. I completely disagree, because it overlooks the fact that the statute requires the touching to be unlawful. And the lawfulness of the touching is the privilege that California law gives a homeowner or property owner, under the circumstances presented by our case, the right to reasonably forcibly eject the trespasser. And escorting this lady out of the building is not an unlawful touching. It can't be. And that's the heart of the trespassers. If your client had known that she was a housing inspector, would the same privilege have applied? I'm sorry? If your client had known that Ms. Gassai was a housing inspector, would the same privilege have applied? Had she known that? Right. No, because I'm here as a housing inspector. Does your client still have a privilege to escort her off the property? No, because at that time, the argument could be made that this woman is official capacity and does have a lawful purpose on the property. Then you don't touch her. Counsel, I thought that I understood that the citizen's complaint that Ms. Gassai filed was for assault rather than battery. Is that right, or am I wrong? No, no, it was for battery. She was prosecuted for battery. Well, I know she was prosecuted for battery. What was the complaint that Ms. Gassai filed? Battery. It was for battery. You can see that the least offensive touching is the standard, and it is the same between both criminal law and tort. Ms. Gassai never represented to law enforcement that it was a swing and a miss. She claimed that she'd been forcibly dragged down a hallway, thrown into a wall, thrown down three flights of stairs, and exaggerated these injuries, which she claimed was no injuries. And, of course, we have evidence in the record that the police officers that examined her on scene said there was nothing visibly wrong with her. And yet the court reached outside that record, as you can see from my recon motion, and went to the depositions that the court and I laudably read, but they weren't in the record, talking about how she received medical treatment the day after. That is, Gassai received medical treatment. Ultimately, though, it gets back to your argument about what's unlawful and whether the privilege converts what would otherwise be under ROCA an unlawful touching into something else. Isn't that really what this boils down to? If the privilege overrides the definition under California law of what an unlawful touching is, whether the privilege overrides that. Well, the ROCA decision had no cause to decide what was unlawful. That wasn't a defense in that case. And I don't argue with the quotation because it's true and it's been established throughout. But let me ask you this, counsel. Putting aside Section 50, just what I read to you from ROCA, the very act of a battery is unlawful, is it not? Unless it's unlawful. No. Not at all. I can touch another person, but that person might feel offensive. I'm kissing a person. It's a law school textbook. You kiss a person that doesn't want to be kissed, you've committed a battery. But that's not probable cause for an arrest, particularly, well, the kissing is a poor scenario. But in a case where you've got a person who is deemed in the eyes of the court not to be known to the plaintiff as an official, would not identify herself, would not leave the property, that's a violation of California law. That's a 6020 violation, which the court seemed to disregard as well. One other question then. You made reference to the finding at ER007, there's finding number six. Are we bound by that finding? No, because this is a de novo review. Okay. That would be my thought. If it was only a light touching, how did she become separated from her purse? The evidence is that the purse was taken separately. Oh, she put it down. When Gassai went through this theatrical swooning at the top landing, when Mrs. Meisler was landing beneath her, the purse was set down. She grabbed the purse, not from her, but from where it had been resting, went down the stairs with the belief that the owner of the purse would follow her out with her property, but that didn't happen. And that's when she went back upstairs and the escort down the stairs took place, and Mr. Mezada happened to come into it. We were running over time, but when you come back, I think Judge Wybie's going to allow you a little bit to respond here. Would you be prepared to address this issue? It seems to me you're taking the best from both sides. On the one hand, you can see that if she knew she was a county official, she could not have touched her and there would have been no privilege, right? On the other hand, you're saying she didn't know that and that, therefore, the privilege protects her from having touched her, and yet you're suing the county of Los Angeles under 1983 to get money from them because you're saying she was acting as a county agent. So with respect, I'm having trouble seeing how you can have it both ways. Either she was acting in the color of law, which Aspen seems to suggest, or she wasn't. If she wasn't, you've got one scenario, but you don't have 1983 necessarily. I see them as separate issues. The color of law, that element of the 1983 tort, by the way, only against the sign of the county, is different than whether probable cause existed for an arrest for battery. Okay. Just be prepared to talk to us about that when you come back. Sure. Let's hear from the county. May it please the Court. Good morning. Candace Colbert for Appellees, Amari Gosai and the County of Los Angeles. I think the judges have pointed out the flaw in the argument, which is that she was not acting under color of law at the time that she made a citizen's arrest. And, in fact, the district court found that there was no Fourth Amendment violation by the seizure of appellant because she had a right to make a citizen's arrest. So, in other words, the district court found, per your take on it, that whatever role she was playing when she sought a citizen's arrest, called the police, she was acting as an individual and not as a county employee. Is that correct? Yes. And that's sort of the end of the analysis. Where did the district court find that? What findings do we have? Then I'm going to ask you if they're disputed. Let's start with what the district court said. Sorry. Excuse me a moment. It does seem only fair that in a case like this that Ms. Meisland know that the person that she was dealing with was a county housing inspector instead of somebody who had now made two attempts to get inside an apartment complex that Ms. Meisland owned and managed without the permission of any tenant and with no other apparent business for being there. It seems only fair that Ms. Meisland be on notice as to who she was dealing with. It certainly would or should have changed her attitude towards Ms. Gassai. Well, the facts are disputed as to whether Gassai identified herself or not, but I don't really think that's relevant. I think she had a right to be there. She had a right to enter a property. Why did she have a right to be there? Because she was a housing inspector and she had a certain amount of authority. But you're not answering Judge Bivey's question. I live not that far from Hawthorne, and Hawthorne has some issues from time to time with respect to property crimes and other crimes. It's in fact a very high crime area from time to time. So why wouldn't Ms. Meisland have perfect right to say, hey, I don't know who this person is here, but I don't want her in here. I don't know why she's here. She may be here to do something that's inappropriate with our apartment or with the tenants here. So in response to Judge Bivey's question, why isn't it relevant that Ms. Meisland apparently did not know that she was a housing inspector? Well, it's not relevant to her arrest and the prosecution. Well, let's put the arrest aside for a moment. Let's talk about the concept of the touching to start with. Well, I agree with the court's prior discussion, which was that any unwanted touching is a battery. And plaintiff admits, and it's undisputed that, or not plaintiff, appellant admits, and it's undisputed that she touched the side. She actually took her against the wall and held her down the stairs. Let's change the facts a little bit. Let's assume for a moment that Ms. Meisland was, in fact, a 6'7 African-American with, and I don't mean to, I'm not trying to make this racial in any way, other than to show that you have a different situation. You've got knives, you've got guns, he's coming in, and he wants to get in the apartment. Would she have had a right to try to remove him in the way that she did Ms. Meisland? I don't think that would be wise or prudent. Well, that's another matter. Yeah. I think she'd have to, you know, even if she thought she was trespassing, her actions still have to be reasonable. And so I guess that's what it comes down to. Would it be reasonable for you to attack that person, basically? And we're saying no. So there's no common sense element to this. It's just one or the other. The fact that she did not know, at least according to what this finding was, that she didn't know that Ms. Meisland was a housing, I forget your client's name, not your client, but the housing inspector. Yes, I. Was a housing inspector is irrelevant to our understanding. Is that correct? Yes. I'm still trying to find the finding. I'm sorry. Why didn't Ms. Gassai identify herself? Our position is that she did. She had a badge. And there's conflicting testimony as to whether she actually, she said, she testified. Now, Mr. Beck said that the district court found in finding number six that she didn't identify herself. Is that finding clearly erroneous? Okay, let's see. Finding number six. It's disputed as to whether she realized Gassai was at the Hoffman apartment building in her official capacity. Is that what you're talking about? Is that what number six says? Mm-hmm. Okay. This factual dispute is not material. Okay. That's what the court found. So it is still an open question as to whether Meisland knew who she was or not. Yes, but it's not material. Okay, tell me why it's not material. Because, in fact, it's kind of illogical that you would argue it the other way, because if you, you know, you can act differently to a person if you know they're a state official, but then the state official gets in trouble. I would act differently if I saw somebody in a police uniform come into my yard than I would if I saw somebody I didn't know come into my yard. I don't know why that's so difficult to understand. Well, I don't think it's relevant. The defense of the privilege of touching has to do with the criminal act of battery. It doesn't have to do with any of the constitutional laws that we're talking about here. That if Ms. Meisland had seen somebody come into the apartment complex who appears armed and prepared to break into apartments, that she cannot touch them for fear that they're going to sue her for battery? Okay, that's a good point. She can't touch them? That's really the point I was asking you about before. This is the heart of Mr. Beck's argument is, wait a minute, property owners have a privilege to deal with trespassers, and that the whole point of the battery statute is that it has to be an unlawful touching, and if you're a property owner touching somebody who's trespassing, that's a privilege, and therefore it's not unlawful. Well, I don't see how any of this goes to the constitutional violations that are being alleged against my clients. She was touched by someone on the premises. She was a private citizen. She called the police, 911. They came. She signed the arrest warrant. The case was prosecuted. There's absolute immunity for that for a citizen. So where's the constitutional violation? I think we're getting caught up in whether what she did or didn't do was lawful or unlawful. Well, it goes to the issue of whether she had probable cause, doesn't it? Well, we didn't. I haven't touched on probable cause yet. No, but, I mean, ultimately that's what it boils down to. Mr. Beck suggests that Civil Code Section 50 undermines the ROCA, among other definitions, of battery. What's your take on that? Does a privilege undermine or eliminate probable cause in circumstances like this? I would say no. I think they're two separate things. What are you relying on? Do you have a case or authority of any kind? No, I actually don't have a case law on these kinds of issues. So being a housing inspector as opposed to a law enforcement officer, there's just a different take on the whole thing. Is it your take? I thought you said that when she made the arrest she was acting as a private person under any circumstances. Is that right? I believe so, yes. Let's frame the question more narrowly then. Does the ROCA definition of battery, is that in any way undermined by the privilege argument from Section 50 of the Civil Code, such that there was no probable cause when she made a citizen's arrest? As a citizen, I would say no. I still think no. What about if she was acting under color of law? If she was acting under color of law, well, I don't think she was. Okay, but let's assume for a moment that she was. Then you would have to show that there was some deliberate indifference or some other malice or something associated with the arrest that would give rise to a constitutional violation. If you say she was not acting under color of law, do you expect us to believe that a police officer would come and see her badge and not go with her wishes to arrest this person for battery? I don't know that that came out, that she told the police. She called 911. You would have us assume that she didn't identify herself as a housing inspector who had been battered. She was just a citizen, and the officer would arrive in three minutes? That's not believable. Counsel, if she's acting as a private person, what's she doing on the property? Is she on frolic and detour? No, that's two separate things. She had the right to be on the property, and her constitutional authority and implications to her position are limited. She had the right to enter on property and be on property and inspect or investigate. But you're mixing up the private and public role again. Well, I'm saying as a public person, she has the authority to enter, which is what she did. So there's no issue there. Now, when she got in there, she met up with someone, and trouble began. And she was assaulted and battered as a private person, as the court recognized earlier. You're still a person. She still can make a citizen's arrest based on a misdemeanor committed in her presence. And that's all she did. Let me be sure I understand the procedural posture of this. I thought I did when I came in, but the way the two of you were talking, I'm not quite sure. At this point, who is the defendant, the county of Los Angeles or Ms. Gasai? Ms. Gasai. Okay, the county's out of it then, right? Well, yes. Okay. And would Ms. Gasai have any right to reimbursement or indemnity by the county were she to lose this lawsuit? Possibly. I'm sorry, I don't know the answer to that. Okay. And are there any other defendants remaining in the case at this point? I'm not sure what the disposition, the city of Hawthorne was not let out on summary judgment when my clients were, but I'm not sure what happened with that. Okay, because it is a 1983 action, right? Yes. And in order to have a 1983 action, you have to have someone acting under color of law as a public official, right? Right. See, that's my problem. You've got, on the one hand, you're talking about an individual who's not disclosing who she is and whatever, or we don't know, and she gets touched. That's a private deal, no 1983 action there. Mr. Beck says that it doesn't really matter, and yet there's a 1983 action. So I'm a little puzzled as to how we're supposed to view this. As an individual, that's what she's acting under? That's one thing. She's acting as a public official. You've got something else. And if she's acting as a public official, then the unlawfulness of the touching becomes apparent regardless of a privilege. Does it not? Yes, that's true. Okay. Thank you, Counsel. Mr. Beck, I'm going to afford you some additional time. Let me clarify one point very quickly. In Volume 1 of the excerpts, appellant's excerpts, at lines 14 through 16, the court's findings. I'm sorry, what page? It's base number 7, paragraph 6, and the line in the phrase. This is ER 7? Yes. AER 7. I'll read it to the court. Plaintiff Catherine Misland, this is the court's finding, did not find out that this woman was defendant Kamari Gassai, a county health inspector, until after plaintiff Catherine Misland was arrested. That was the court's finding, in fact. And you said we're not bound by that? I think so. Everything's open. Your opposing counsel says that's a disputed fact based upon further language. Do you disagree with that? Well, do I disagree with it? Yes, I do. I mean, I think the court was correct in coming to the conclusion because the evidence was, from several sources, that this woman never identified herself and she was regarded as a trespasser, which then takes us to the issue. Under California law, a property owner has the right to use reasonable force and therefore not be in violation because it's not unlawful of the California Battery Statute. And that fact weighs into the calculus of probable cause that this trial court simply disregarded. I do not have Section 50 of the California Civil Code in front of me. What does that section say? Essentially it gives the privilege of a right to use reasonable force. And is reasonable force the term in the statute? It only uses that term. No. Does the statute use the term reasonable force? Yes. Okay. Yes, it does. And, indeed, I didn't cite it earlier. It's in the brief. There is a page 22 of my opening brief I've actually set out here. And I'll quote. This is from a Kentucky Fried Chicken of California v. Superior Court and it says, quote, Article I, Section 1 of the California Constitution and Civil Code Section 50 recognize the right of any person to defend property with reasonable force. Martin was entitled to use any necessary force to eject him from the premises as a trespasser and to prevent a disturbance thereon. And that's from Martin v. Casa, 23 of the opening. So, basically, the bottom line from your perspective is that given Section 50, given the fact that Ms. Meisland didn't know that Casai was a housing inspector, meant that she had the privilege to get her out of the place because she didn't know who she was. She had no idea what her intentions were. And your 1983 action comes because there was no touching until after she knew she was a housing inspector or the arrest occurred. Which was it? I think it's 1982 from the moment the color of law element of 1983 stays with Casai from the moment she tries to get onto the property and is refused, tries to get onto the property. But counsel, again, you're trying to have it both ways. You admit that it would be unlawful for Ms. Meisland to touch a housing inspector, and yet you say she didn't know she was a housing inspector until later on. And yet now you want to relate back the fact that she was a housing inspector from the beginning. It's really, you know, you're both sides, frankly. You can't decide which way you're going on this thing. I know you're picking out what you think is most helpful. But to me, ultimately, the question gets down to did she have probable cause? If you look at it where she's a private citizen, you may have a point. If she is a public housing official, you don't have a point. Isn't that really what it boils down to? Well, I've never seen it that way. I tend not to agree with that because I separate the two. You wear that hat throughout the entire episode. And my criticism of the court's ruling was that all of these other defenses that weigh into a calculus of probable cause simply weren't considered. That's where I'll rest it. Thank you, counsel. Thank you, Your Honor. We thank you both, counsel, for the argument. Misland v. Hawthorne is also submitted. The next case on the oral argument calendar is United States v. Bradshaw.
judges: Dawson, Bybee, Smith M.